**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

CHAMBERS OF
RONALD J. HEDGES
UNITED STATES MAGISTRATE JUDGE

MARTIN LUTHER KING, JR.
FEDERAL BUILDING AND COURTHOUSE
50 WALNUT ST., ROOM 2042
NEWARK, NEW JERSEY 07101-0999
(973) 645-3827

October 30, 2006

**LETTER-OPINION AND ORDER**
**ORIGINAL FILED WITH CLERK OF THE COURT**


Robert S. Raymar
Robert B. Rosen
Hellring Lindman Goldstein & Siegal LLP
One Gateway Center
Newark, New Jersey 07102-5386

Daniel J. Kornstein
Cecelia Chang
Kornstein Veisz Wexler & Pollard, LLP
757 Third Avenue
New York, New York 10017


      Re:    Dworin v. Deutsch et al.
                  Civil Action No. 2:06-CV-01571 (WJM)(RJH)

Dear Counsel:

      This matter comes before me on the motion of defendants Linda Sawyer and Deutsch Inc. to dismiss this action for lack of personal jurisdiction or, in the alternative, to dismiss on grounds of *forum non conveniens* or to transfer venue to the United States District Court for the Southern District of New York. I have considered the papers submitted in support of and in opposition to the motion. There was no oral argument. Rule 78.

1

**BACKGROUND**

Plaintiff Steven Dworin ("Dworin") commenced this action against Donald Deutsch ("Mr. Deutsch"), Linda Sawyer ("Sawyer") and Deutsch Inc. for breach of contract and libel in connection with the statements contained in a book entitled <u>Often Wrong, Never In Doubt: Unleash The Business Rebel Within</u> ("<u>Often Wrong</u>").[1]  Dworin filed the Complaint on March 30, 2006, in the Superior Court of New Jersey, Law Division, Union County.  The matter was then removed to this Court pursuant to 28 U.S.C. § 1446(a).

Deutsch Inc. is an advertising agency headquartered in New York, which develops advertising campaigns and strategies for its nationwide client base.  It neither owns property in New Jersey nor maintains an office or bank account in the State.  Deutsch Inc. is not registered to do business in the State and has never filed a New Jersey tax return.  Although Deutsch Inc. serves clients with offices in New Jersey, defendants maintain that their work for such clients does not specifically target the New Jersey market but is instead designed for nationwide marketability.

In 1991, Dworin was recruited by Deutsch Inc. to serve as president and partner.  Mr. Deutsch was the Executive Vice-President and equity-holder at Deutsch Inc.  The two men worked closely with one another until Dworin resigned from Deutsch in February of 1994.  The Complaint includes lengthy accounts of the disputes and activities that, accordingly to Dworin, resulted in his voluntary resignation from Deutsch Inc.  Conflicting accounts are given concerning the reasons for Dworin's departure, but it is apparent that Dworin left because he

---

[1] Although the Complaint names three defendants, the motion was made on behalf of defendant Deutsch Inc., a corporation, and defendant Sawyer, an individual and acting CEO of Deutsch Inc., (hereinafter collectively referred to as "defendants").

2

found the business practices and behavior of Mr. Deusch to be intolerable.2  Significantly, in February 1994, a severance agreement ("the Severance Agreemnt") was negotiated and executed in New York specifying the terms of Dworin's departure from Deutsch Inc.  The agreement provides that it is to "be governed by and construed in accordance with [the] laws of the State of New York."

Often Wrong was first published in October, 2005, over ten years after Dworin's departure from Deutsch Inc.  The book is an "autobiographical business success manual" in which Mr. Deutsch shares his personal experiences.3  The statements in controversy are found in approximately 13 pages of the 248-page book.  Dworin takes issue with the characterization of his former partnership with Mr. Deutsch and the circumstances surrounding his eventual resignation from Deutsch Inc., maintaining that such descriptions violate the Severance Agreement by defaming his reputation.  Compl. ¶ 2.

Sawyer, a citizen of New York, worked at Deutsch Inc. for over 16 years. Sawyer states that she neither owns property in New Jersey nor regularly travels to the State for business or social engagements.  Dworin alleges that Sawyer, in her capacity as Chief Executive Officer of Deutsch Inc., served as a "de facto editor" of Often Wrong.  Compl. ¶ 21.  Dworin further alleges that several other employees and high-ranking personal of Deutsch Inc. collaborated in the preparation and editing of Often Wrong.  Although the extent of their participation is disputed, the record demonstrates that several Deutsch Inc. employees were at least marginally involved in the process of preparing Often Wrong for publication.

---

2 While not bearing on the instant determination, the Complaint contains a barrage of defamatory and derogatory statements, including outright criminal accusations, in reference to Mr. Deutsch during the span of their tumultuous partnership.  Compl. ¶¶ 13-24.

3 Defendants' Memorandum of Law states that Often Wrong was co-authored by Peter Knobler and published by HarperCollis.  That neither of them are named defendants, accordingly to defendants, reflects the grudge and personal hostility at the core of Dworin's action.

3

Often Wrong was distributed to retail establishments located in states other than New York, including New Jersey. Dworin, a New Jersey resident, seeks damages in response to the book's defamatory misrepresentations concerning the circumstances leading up to his resignation from Deutsch Inc.

## ANALYSIS

A district court may transfer a case pursuant to 28 U.S.C. § 1404(a) with or without personal jurisdiction over the defendant. U.S. v. Berkowitz, 328 F.2d 358, 361 (3d Cir. 1964); Goldlawr, Inc. v. Heiman, 369 U.S. 463, 467 (1962)). "Where a defendant has challenged a court's power over his person and, at the same time, has moved alternatively for transfer, the interests of judicial economy are best served by initial address of the transfer issue." Berk v. Ronald, 2006 U.S. Dist. LEXIS 25862, *2 (E.D. Pa. Apr. 2, 2006); Lomanno v. Black, 285 F. Supp.2d at 640. Therefore, I will decide whether transfer is appropriate and I decline to decide the personal jurisdiction question. See Thorlabs Inc., v. Townsend Commc'ns, L.L.C., 2004 WL 1630488, *4 (D.N.J. June 30, 2004) (declining to reach the issue of personal jurisdiction after determining transfer was appropriate).[4]

**I       Transfer Standard**

A district court may transfer any civil action to any district where the action might have been brought in the interests of justice and for the convenience of the parties and witnesses. 28

---

4  I also decline to address the defendants' request for dismissal on the grounds of *forum non conveniens* because such rulings are typically reserved for actions involving foreign parties. Some district courts have in the past required the same showing in a motion to transfer under Section 1404(a) as for application of the doctrine of *forum non conveniens*. See, e.g., Stanton v. Hyatt Corp., 41 V.I. 275, 1999 U.S. Dist. LEXIS 6697, *10-11 (D.V.I. Apr. 29, 1999). However, Section 1404(a) was "intended to permit courts to grant transfers upon a lesser showing of inconvenience." Norwood v. Kirkpatrick, 349 U.S. 29, 32 (1955).

U.S.C. § 1404(a). The function of Section 1404(a) is "to prevent the waste of 'time, energy, and money' and to 'protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" Van Dusen v. Barrack, 376 U.S. 612, 616 (1964); see Concession Consultants, Inc., v. Mirisch, 355 F.2d 369, 371 n.3 (2d Cir. 1966) (noting even where venue is proper, a court may transfer an action pursuant to Section 1404(a)). The burden of establishing that transfer is warranted is borne by the moving party. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 248 (1981); Ricoh v. Honeywell, Inc., 817 F. Supp. 473, 480 (D.N.J. 1993). The moving party must show that the proposed alternative forum is not only adequate, but also more convenient, than the present forum. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). But determining the propriety of a motion to transfer does not necessarily require extensive investigation. Van Cauwenberghe v. Biard, 486 U.S. 517, 529 (1988).

Analysis of whether transfer is appropriate is not governed by a single rigid rule. Rather, the determination is flexible, turning on the unique and specific facts of each action. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29-30 (1988). Courts balance various private and public interests when deciding whether to transfer pursuant to Section 1404(a). Jumara, 55 F.3d at 879. The Third Circuit has recognized the private interest factors to include: (1) plaintiff's choice of forum; (2) defendant's forum preference; (3) whether the claim arose in another forum; (4) "the convenience of the parties as indicated by their relative physical and financial condition"; (5) "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora"; and (6) the location of books and records similarly limited to the extent they may be unavailable in the alternative forum. Jumara, 55 F.3d at 879; Clark v. Burger King Corp., 255 F. Supp. 2d 334, 337-38 (D.N.J. 2003).

Public interest factors to consider include: (1) judgment enforceability; (2) "practical

considerations that could make the trial easy, expeditious, or inexpensive"; (3) court congestion in the both present and proposed districts; (4) local interest in deciding local controversies at home; (5) the relevant public policies of each forum; and (6) in diversity cases, the trial judge's familiarity with the applicable state law.  Jumara, 55 F.3d at 879-80; Clark, 255 F. Supp. 2d at 338.  Balancing the various public and private interest factors established from the record, I conclude that the Southern District of New York is the most appropriate forum to adjudicate this controversy.

## II.     Transfer As Applied to This Case

Transfer under Section 1404(a) requires the movant to first show that the transferee court is one where the action could have originally been brought.  Khalil v. Otto Bock Orthopadische Industrie GMBH & Co., 115 Fed. Appx. 524, 2004 U.S. App. LEXIS 18230 (3rd Cir. 2004) (holding that "whether the transferee court has personal jurisdiction over the company need[s]to be made, in the first instance, by that court on transfer"); see Shutte v. Armco Steel Corp., 431 F.2d 22, 24 (3d Cir. 1970), cert. denied, 401 U.S. 910 (1970); CIBC World Mkts., Inc. v. Deutsch Bank Sec., Inc., 309 F.Supp. 2d 637, 644 (D.N.J. 2004).  Deutsch Inc. is a New York corporation with its principal place of business in New York.  Mr. Deutsch is a citizen of New York and Sawyer is a New York resident.  The amount in controversy, as asserted by Dworin, exceeds the $75,000 requirement.  Whether Dworin is found to be a domiciliary of New Jersey or Connecticut, transfer to the Southern District of New York will not destroy diversity.  Accordingly, this action could have been brought in the Southern District of New York.

### A.     Private Interest Factors

Plaintiff's choice of forum is ordinarily afforded great weight in determining whether

transfer is appropriate under Section 1404(a).  See Lony v. E.I. DuPont de Nemours & Co., 886 F.2d 628, 633 (3d Cir. 1989); Lacey v. Cessna Aircraft Co., 862 F.2d 38, 43 (3d Cir. 1988) (noting that plaintiff's choice of forum should rarely be disturbed, unless the balance of the factors is strongly in the defendant's favor).  Where, however, the operative facts occur outside of the chosen forum, plaintiff's choice of forum is accorded less weight.  LG Elecs. v. 1st Int'l Computer, Inc., 138 F. Supp. 2d 574, 590 (D.N.J. 2001); Honeywell, 817 F. Supp. at 481.  "As a general rule, the preferred forum is that which is the center of gravity of the accused activity."  NCR Credit Corp. v. Ye Seekers Horizon, Inc., 17 F. Supp.2d 317, 321 (D.N.J. 1998); see Gallant v. Trustees of Columbia University in the City of New York, 111 F. Supp.2d 638, 646-47 (E.D. Pa. 2000).

  Relying solely on his status as a New Jersey resident, Dworin maintains that transfer to Southern District of New York is inappropriate because it would merely "shift the inconvenience of litigating in a particular forum from one party to the other."  Opp. Br. 9-10.  The sale and distribution of Often Wrong in New Jersey constitutes forum activity, Dworin avers, which is responsible for the injury he has sustained in the present forum.  Despite the arguments advanced by Dworin, most, if not all, of the operative events giving rise to the breach of contract and libel claims occurred in New York, not New Jersey.

  Both of Often Wrong's authors are New York residents.  The book was written in New York and published by a New York publishing firm.  The alleged defamatory statements pertain to Dworin's employ at Deutch Inc., and to events that transpired in the New York office.  The Severance Agreement was negotiated and executed in New York and provides that it is to be governed by New York law.  Dworin contends that his claims arose in the transferee forum because he sustained the libious injury in New Jersey.  But Dworin's status as a New Jersey

7

resident alone does mean that the instant claims arose there.  See Gulf Oil Corp., 330 U.S. at 509; Cruz, 2006 U.S. Dist. LEXIS 29706, at *22.[5]

Notwithstanding that the operative facts occurred in New York, Dworin is unable to tip the balance of interests in favor of denying transfer due to the suspicious circumstances concerning whether he is domiciled in New Jersey.  A plaintiff's forum selection is accorded significantly less deference, if any at all, where the record demonstrates the plaintiff misrepresented his residency or domiciliary status in order to bring suit in a preferred forum.  See Reed Elsevier, Inc. V. Inherent.Com, Inc., 05-CV-4048, *8 (D.N.J. Oct. 13, 2005) (denying transfer in light of movant's opporture relocation and lack of additional connections to new forum); see also Hatfill v. Foster, 415 F. Supp. 2d 353, 365 (S.D.N.Y. 2006).

Defendants have submitted news reports, the results of electronic database searches and other evidence demonstrating that Dworin resided or purported to reside in Stamford, Connecticut, subsequent to filing the Complaint on March 30, 2006.  Chang Reply Aff. Exhs. B-C.  This evidence includes a recent posting of Dworin's resume and his online dating profile, both indicating a Stamford address.  Such evidence undermines his claim that he is a domiciliary of New Jersey and, in turn, reduces the weight accorded his forum selection because his allegations are predicated on the negative impact Often Wrong has had on his reputation in New Jersey.  In response to defendants' evidence, Dworin has presented nothing more than self-serving statements to show that he is in fact a New Jersey domiciliary.

Convenience considerations also tip decidedly in favor of transfer.  Dworin failed to

---

[5] In addition, because Manhattan is easily the epicenter of the advertising industry encompassing the tri-state area, the reputation in the transferee forum of a major figure within the industry is not inconsequential.  By his own account, Dworin was considered a "star" from the inception of his career.  He was "senior vice president and the Director of Account Management at J. Walter Thompson, one of Madison Avenue's most prestigious advertising agencies" before he was recruited "to take over the agency as President and partner." Compl. ¶ 2.  Dworin, nevertheless, maintains that the instant forum is proper because his reputation was damaged in New Jersey.

name any witnesses with residence in New Jersey that would be inconvenienced by traveling to Manhattan. For Dworin, since he purportedly maintains a residence in Connecticut, traveling to the transferee court would be no less convenient than traveling from New Jersey. Further, as Dworin's claims are predicated on activities that occurred in New York and derive from a contract governed by New York law, the evidentiary materials will be drawn principally, if not completely, from within the boundaries of the Southern District of New York. Similarly, the location-of-books-and-records factor favors transfer.[6]

### B.   Public Interest Factors

The public interest factors militate in favor of transfer. With respect to enforceability, as explained above, while the three named defendants may be subject to the jurisdiction of the transferor Court, there is no doubt that they are subject to the jurisdiction of the transferee court given the connections between the forum and the operative events discussed above.

Practically, the familiarity of the trial judge with applicable law also does not weigh heavily for or against transfer because this case does not involve any novel or difficult applications of state law. However, the Supreme Court has recognized the "appropriateness * * * in having the trial of a diversity case in forum that is at home with state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." Gulf Oil Corp., 330 U.S. at 509.

This action warrants the application of New York law. A federal court sitting in diversity must apply the rules governing the choice of law for the forum state. On Air Ent. Corp. v. National Indem. Co., 210 F.3d 146, 149 (3d Cir. 2000). Where the transfer of venue is

---

[6] However, the weight of this factor is reduced due to the proximity of transferor and transferee courts. See Larami Ltd., 244 B.R. at 62. Also, as is increasingly the case, the storage of and transferability of electronic files, such as the proffered e-mails of Deutsch Inc. employees, further reduces the significance of this factor.

determined pursuant to Section 1404, the transferee court matter must apply the choice of law rules that would have been followed in the transferor court.  See Van Dusen, 376 U.S. 612. Dworin's claims are thus governed by New Jersey choice of law rules.  New Jersey applies the law of the state with the most significant connections to the parties.  See Gilbert Spruance v. Pennsylvania Man., 134 N.J. 96, 102-103, 629 A.2d 885 (1993).  As detailed above, Dworin's claims have by far the most connections to New York.

Even within the context of libel cases concerning multi-state publications, the law of the state where the plaintiff has suffered the greatest harm to her reputation is generally applied. The greatest harm occurs in the "district where the plaintiff was domiciled" at the time when the material was published.  Hatfill, 415 F. Supp. 2d at 365 (applying D.C. law over plaintiff's own statements after concluding the indicia of plaintiff's domicile and residence indicated that his reputation suffered the most damage there).  The record indicates that Dworin has more indicia of domicile in Connecticut than he does in New Jersey.  Accordingly, New York State law will govern this action, which militates in favor of transfer.

Finally, the attenuated nature of Dworin's ties to New Jersey weakens his public policy argument.  Although  New Jersey has an interest in protecting its residents from the wrongful acts of nonresidents, it has no interest in resolving private disputes occurring outside the State between nonresidents and disingenuous residents seeking refuge.  On balance, the Southern District of New York is the most suitable forum for the adjudication of this action.  Dworin has failed to proffer compelling reasons why transfer is unwarranted.

10

## CONCLUSION

For the reasons set forth above, the motion to transfer this action to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a) is hereby granted.

**SO ORDERED.**

<u>s/ Ronald Hedges</u>
**HON. RONALD J. HEDGES, U.S.M.J.**